TALANDIS CONSTRUCTION CORPORATION, Plaintiff, *v.* ILLINOIS BUILDING AUTHORITY, Defendant—(ILLINOIS BUILDING AUTHORITY, Third-Party Plaintiff-Appellant, *v.* BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Third-Party Defendant-Appellee).

(No. 58987; 

First District (1st Division)—November 4, 1974.

No brief for plaintiff Talandis Construction Corporation.

No brief for defendant Illinois Building Authority.

Schippers, Betar, Lamendella & O'Brien, of Chicago (Dennis M. O'Brien, of counsel), for third-party plaintiff-appellant.

Hackbert, Rooks, Pitts, Fullagar & Poust, of Chicago (Jerome N. Groark, Stephen E. Sward, and James J. Costello, of counsel), for third-party defendant-appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

This is an appeal by the Illinois Building Authority from an order dismissing its third-party complaint.

In January of 1968, the plaintiff, Talandis Construction Corporation, entered into a contract with the Illinois Building Authority (Authority) to construct a small animal clinic and hospital for the use of the School of Veterinary Medicine at the University of Illinois at Urbana. Talandis commenced construction on February 26, 1968, pursuant to the terms of the contract with the Authority, and established progress schedules in order to comply with the required completion date of February 1, 1970. Shortly after work had begun, the University and the Authority determined to give consideration to the future construction of an additional, larger animal clinic to be placed immediately to the west of the facility being constructed by Talandis.

Plaintiff filed a complaint on August 13, 1971, alleging that the consideration of the proposed large animal clinic led to indecision over the final plans and specifications of the small animal clinic. The indecision allegedly caused delays and work stoppages which forced plaintiff to abandon its progress schedules and customary practices of construction. Substantial disarrangement allegedly ensued, making performance in an orderly manner impossible. As a result, Talandis sought damages for additional costs, overhead and profit.

Plaintiff alleges that the Authority breached or varied its contract in requiring the plaintiff to honor a stop order and numerous change orders issued by the Authority and its architect, the Perkins and Will partnership, in an attempt to coordinate the planning and construction of the proposed larger clinic with the facility being constructed by Talandis. Accommodations for such coordination were not allegedly contemplated in the original contract between plaintiff and the Authority.

The Authority filed a third-party complaint against the Board of Trustees of the University and the Perkins and Will partnership, alleging the latter to be an agent of the University. The essence of the Authority's complaint was that the University was primarily responsible for the delays in construction and therefore interfered with the plaintiff's timely and proper performance of its construction contract. The Authority sought indemnification from the University from any judgment entered against it in favor of the plaintiff.

The University responded with a motion to dismiss on the basis that the Authority's complaint was barred by the provisions of section 8(d) of "An Act to create the Court of Claims * * *" (Ill. Rev. Stat. 1973, ch. 37, 439.8(d)), in that the exclusive jurisdiction of any claim sounding in tort against the Board of Trustees of the University lies in

the Court of Claims. The trial court granted the motion to dismiss, with leave to amend.

The Authority filed an amended third-party complaint based upon a similar theory of the University's interference with the contract between the Authority and the plaintiff. The University moved to dismiss and again the trial court dismissed the complaint with leave to amend.

The Authority filed a second amended third-party complaint, again alleging that the University had interfered with the proper performance of plaintiff's contract. The Authority also relied on a lease agreement between itself as lessor and the University as lessee of the property upon which the small animal clinic was being constructed. Paragraph 20 of the amended third-party complaint states:

"20. That if the allegations of the complaint are proven to be true, the Third-Party Defendant, BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, should be liable under the lease agreement to pay to the Third Party Plaintiff the amount of any judgment rendered herein against it and for the costs and expenses incurred, including attorney's fees and court costs."

The University responded with a motion to dismiss contending that the language of the lease did not require the University to indemnify the Authority should the Authority be found to have breached its contract with the plaintiff. From an order dismissing the second amended third-party complaint, the Authority appeals. The court found that there was no just reason to delay enforcement or appeal. We conclude that the trial court properly dismissed the second amended third-party complaint.

Two statutory provisions establish that any common-law tort claim against the Board of Trustees of the University must be filed in the Court of Claims. The enabling act of the University in part provides that the Board of Trustees shall:

"* * * be a body corporate and politic * * * have perpetual succession, have the power to contract and be contracted with, to sue and be sued, provided that any suit against the Board based upon a claim sounding in tort must be filed in the Court of Claims [this provision was added by amendment approved August 26, 1971], to plead and be impleaded, to acquire, hold, and convey real and personal property." Ill. Rev. Stat. 1973, ch. 144, par. 22.

The enabling act of the Court of Claims provides that the court shall have exclusive jurisdiction over the following matters:

"All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person

or corporation in a civil suit, and all like claims sounding in tort against the * * * Board of Trustees of the University of Illinois; * * * provided, that an award for damages in a case sounding in tort shall not exceed the sum of $100,000 to or for the benefit of any claimant." Ill. Rev. Stat. 1973, ch. 37, par. 439.8(d).

The Authority argues that the University retained final authority over the ultimate approval of additional plans and specifications under the provisions of the act creating the Authority. (Ill. Rev. Stat. 1967, ch. 127, par. 213.5(a).) Because of this final approval power, the Authority says that the University was responsible for the indecision leading to the construction delays of the small animal clinic. As the above statutory provision indicates, the Court of Claims has exclusive jurisdiction for any claim sounding in tort against the Board of Trustees of the University. The Authority, therefore, cannot lawfully prosecute its third-party action based on alleged tortious conduct on the part of the University. *Board of Trustees v. Industrial Com.*, 44 Ill.2d 207, 254 N.E.2d 522.

We recognize that section 8(d) of the Court of Claims Act provides that in a case sounding in tort, the claimant cannot be awarded more than $100,000. This provision does not overcome the positive statement in this Act that claims sounding in tort must be brought in the Court of Claims.

We next consider the provisions of the lease agreement between the Authority and the University. The provision which allegedly indemnifies the Authority for any judgments awarded against it because of a breach affecting a third-party construction company reads:

"8. It is expressly understood and agreed that upon the payment of the total sum of $10,786,635. (less the sum of $1,053,725. which has been paid under the terms of an Interim Lease) in rentals under the terms of this lease and all renewals thereof plus any other amounts which Lessor may have paid to protect its interest hereunder, this Lease shall terminate and Lessor shall transfer to Lessee all of Lessors right, title and interest in and to said Facilities, and also jurisdiction or title to all parts of the property described in Paragraph 5 hereof as to which the Lessee has theretofore transferred jurisdiction or title to the Lessor pursuant to the Act, all free and clear of the terms of this Lease and all other encumbrances, except any presently existing and except Acts done or suffered by Lessee, or other cause beyond the control of Lessor."

Contracts of indemnity are to be strictly construed, and the courts will not read into the contract an indemnity term where it is clear from

the language of the contract that no such term was intended. *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.*, 395 Ill. 429, 70 N.E.2d 604; *Marshall Field & Co. v. J. B. Noelle Co.*, 81 Ill.App. 2d 409, 226 N.E.2d 454.

■■ The language of the provision is plain and unambiguous. The University is bound to pay only the additional expenses incurred by the Authority in protecting its interest "hereunder," or under the lease. Under the lease the Authority is to receive the annual rent, to be assured that the University pay any taxes due, make repairs, not overload the floors, etc. If the University should fail in any of the obligations stipulated in the lease, the University must reimburse the Authority for monies paid "to protect its interest hereunder." The Authority is seeking indemnification from the University for additional construction costs resulting from the Authority's alleged breach of a separate contract between itself and the plaintiff construction company. There is nothing in the language of the provision that requires the University to indemnify the Authority under the circumstances. In essence, the Authority is not seeking indemnification for any rights it may possess by virtue of the lease.

The Authority argues in the alternative that the University breached an implied duty not to interfere with the contract between the Authority and the plaintiff. Despite the mixture of terms from contract and tort law, all of the theories used to substantiate implied indemnification involve fault weighing. The inquiry is usually directed towards tortious conduct of some kind, where the courts attempt to determine which party must bear primary responsibility for the injury. (*Wrobel v. Trapani*, 129 Ill.App.2d 306, 264 N.E.2d 240.) Insofar as the Authority's argument is based upon the University's alleged interference with the plaintiff's performance, the claim cannot be pursued in the circuit court.

The Authority further argues that the lease between itself and the University makes the University an interested party in the contract between the Authority and the plaintiff. The Authority contends that in the absence of an express indemnity agreement, the University is in reality a party in interest in the construction of the small animal clinic, thereby subjecting the University to the payment of damages for any breach attributed to the fault of the Authority. The question, then, is whether a breach of contract complaint against the Authority can be the basis for a third-party action against the University for indemnification. We believe that it cannot.

*Board of Education v. Joseph J. Duffy Co.*, 97 Ill.App.2d 158, 240 N.E.2d 5, is a case in which this court addressed the same question. In *Duffy*, the Board of Education, as plaintiff, sued an architectural firm on

the grounds that it breached its contract with the Board by improperly supervising and designing a high school building. The architectural firm filed a third-party complaint against Duffy, the general contractor, claiming indemnification against a possible judgment in favor of the plaintiff. After finding that the statute of limitations had rendered all questions of tort liability irrelevant, the *Duffy* court faced the identical question now before us. The court in *Duffy* concluded as follows:

> "Our research discloses no authority—and Perkins cites none—for the proposition that liability for breach of contract might entitle the wrongdoer to indemnity from a third party who was a stranger to the contract and who had not contractually undertaken to indemnify the wrongdoer." 97 Ill.App.2d 158, 162.

The Authority faces the possibility of being held liable in contract. As the *Duffy* decision indicates, a stranger to a contract between two parties cannot be compelled to indemnify one of the parties for breach of contract absent the stranger's express agreement to so indemnify. The University is not a party to the contract between the Authority and the plaintiff, which was in fact executed after the lease agreement between the Authority and the University. Being a stranger to that contract, the University does not have a duty—express or implied—to indemnify the Authority for a possible adverse judgment based upon an alleged breach of contract.

We hold, therefore, that the trial court properly dismissed the third-party complaint against the University, and the judgment is affirmed.

Judgment affirmed.

EGAN, P. J., and GOLDBERG, J., concur.